TUCSON AIRPORT AUTHORITY, and; City of Tucson, Plaintiffs,

v.

GENERAL DYNAMICS CORPORATION, a Delaware Corporation, Defendant.

GENERAL DYNAMICS CORPORATION, Third-party-plaintiff-Appellant,

v.

William PERRY, Secretary of Defense; Sheila E. Widnall, Secretary of the Air Force; United States of America, Third-party-defendants-Appellees.

No. 97–15052.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1997.

Decided Feb. 12, 1998.

Herbert L. Fenster, McKenna & Cuneo, Denver, CO, for third-party-plaintiff-appellant.

Paul Yanowitch, Assistant United States Attorney, Washington, DC, for third-party-defendants-appellees.

Before: ALDISERT,* D.W. NELSON and TASHIMA, Circuit Judges.

ALDISERT, Circuit Judge:

This appeal by General Dynamics from the dismissal, for want of subject matter jurisdiction, of its third-party complaint against the United States, the Secretary of Defense and the Secretary of the Air Force requires us to examine fundamental precepts of federal sovereign immunity.

A complaint filed by the Tucson Airport Authority ("TAA") sought an order requiring General Dynamics to contribute to the costs of investigation and remediation of groundwater and soil contamination near the Tucson International Airport. In its third-party complaint, General Dynamics sought declaratory and injunctive relief, arguing that the United States is contractually obligated to assume its defense. The district court held that the defendants were immune from suit under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702 and 704, and dismissed General Dynamics's claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

The seeds of this controversy go back to the winding down of defense production efforts in World War II and involve the relationship between General Dynamics's corporate predecessor in interest, Consolidated Vultee Aircraft, and the federal government. From 1942–1945, Consolidated modified aircraft under a series of contracts with the

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by

United States Army Air Corps, predecessor to the United States Air Force. Consolidated performed much of this work at a three-hangar facility at the Airport under Contract No. W–535 ac–26999 (the "Modification Center Contract").

The Modification Center Contract contained a termination article, which provided:

> Upon the termination of this contract … [t]he government shall assume and become liable for all obligations, commitments and claims that [Consolidated] may have theretofore in good faith undertaken or incurred in connection with said work and in accordance with the provisions of this contract. …

CR 64, Ex. B at 14.

On June 30, 1944, the United States suspended work on the Modification Center Contract. On November 9, 1945, Consolidated and the United States entered into a Settlement Agreement which incorporated the termination article of the Modification Center Contract.

Some 36 years were to pass before echoes of the World War II production effort reverberated again in Tucson. This time it was not the Army Air Corps that came to town; it was the Environmental Protection Agency ("EPA"). In 1981, the EPA discovered groundwater contamination near the Airport, the site of Consolidated's war-time production. In 1988, the EPA notified General Dynamics that it might be a potentially responsible party for the contamination under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675. On September 26, 1991, the EPA notified General Dynamics that it also might be a potentially responsible party under CERCLA for soil contamination near the Airport. Thus, the scenario before us involves one branch of the federal government in 1991 questioning the conduct of government contractors a half century earlier when the public policy of our government

designation.

was not the protection of the environment, but to crank out combat aircraft by the thousands to crush the military around the globe aligned against us.

General Dynamics now has been named as a defendant in at least four separate state and federal lawsuits related to the Airport contamination. These include the present suit by TAA, filed June 3, 1994, in the District of Arizona, seeking investigation and remediation costs from General Dynamics. After TAA filed suit, General Dynamics filed a third-party complaint against the United States, the Secretary of Defense and the Secretary of the Air Force. In the portion of the complaint at issue on appeal, General Dynamics contends that the government's failure to assume its defense-as required by the Modification Center Contract-violates the Contract Settlement Act, 41 U.S.C. § 106(c), and several provisions of the United States Constitution. General Dynamics also contends that the mandamus statute, 28 U.S.C. § 1361, compels the individual defendants to honor the terms of the Modification Center Contract and the Settlement Agreement, and seeks declaratory and injunctive relief requiring the United States to assume its defense. On April 9, 1996, the district court granted partial summary judgment to the defendants on all counts. General Dynamics appeals from that order.

## II.

We begin with a brief discussion of sovereign immunity as applied to the federal government. General Dynamics implores us to provide a forum in which it may be made whole. It is clear, however, that the concept of make-whole relief inherent in much of the common-law tradition does not apply in the context of actions brought against the United States.

■ To the contrary, a suit against the United States must start from the opposite assumption that no relief is available. *See* David A. Webster, Beyond Sovereign Immunity: 5 U.S.C. § 702 Spells Relief, 49 Ohio St. L.J. 725, 726 (1988) ("Governmental immunity from suit is so firmly intrenched as to be substantially beyond question in the federal courts."). The theoretical justifications

for the inherent limitation on the power to sue the sovereign have changed over time-ranging from the old English theory that "the king can do no wrong" to modern notions of separation of powers-but the premise that only Congress can abrogate this immunity and subject the federal government to suit remains undisputed. *Id.* at 727. This premise is consistent with the fundamental notion that federal courts are courts of limited jurisdiction.

■ Furthermore, waivers of sovereign immunity are to be strictly construed. *United States v. Trident Seafoods Corp.*, 92 F.3d 855, 864 (9th Cir.1996), *cert. denied,* ── U.S. ──, 117 S.Ct. 944, 136 L.Ed.2d 833 (1997). Thus, that a plaintiff against the United States may receive less than complete relief in the federal courts should not necessarily be viewed as an inappropriate result, for such a plaintiff is accorded, by statute, more relief than historical principles of sovereign immunity would allow. It is with these precepts in mind that we consider General Dynamics's claims.

## III.

■ We review de novo the district court's determination that it lacks subject matter jurisdiction and review for clear error the district court's findings of fact relevant to that determination. *H20 Houseboat Vacations Inc. v. Hernandez,* 103 F.3d 914, 916 (9th Cir.1996).

■ As the foregoing discussion makes clear, General Dynamics "may sue the United States only if Congress has waived sovereign immunity for the lawsuit, and may bring its claim in federal district court only if Congress has provided for jurisdiction there." *North Star Alaska v. United States,* 9 F.3d 1430, 1432 (9th Cir.1993) (en banc) [*North Star Alaska II* ]. General Dynamics invokes the APA as the source of the United States's alleged waiver:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color

of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.... Nothing herein ... confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

■ It is beyond question, and General Dynamics admits, that the APA does not provide an independent basis for subject matter jurisdiction in the district courts. *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). General Dynamics contends that its substantive rights originate in the Contract Settlement Act and the United States Constitution, and that the government's unlawful action in violation of these rights allows district court jurisdiction under 28 U.S.C. § 1331 and APA § 702's waiver of sovereign immunity.

The APA's waiver of sovereign immunity, however, contains several limitations. By its own terms, § 702 does not apply to claims for "money damages" or claims "expressly or impliedly forbid[den]" by another statute granting consent to suit. Moreover, only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court" are subject to judicial review. 5 U.S.C. § 704. Therefore, the APA waives sovereign immunity for General Dynamics's claims only if three conditions are met: (1) its claims are not for money damages, (2) an adequate remedy for its claims is not available elsewhere and (3) its claims do not seek relief expressly or impliedly forbidden by another statute. General Dynamics's claims satisfy the first two prongs of this test, but are barred by the third.

### A.

■ General Dynamics's claims are not for "money damages." The remedy that General Dynamics seeks in its complaint is, at bottom, specific performance of the Modification Center Contract. An action for specific performance is not an action for "money damages" under APA § 702, even if the remedy may actually require a payment of money by the government. *Blue Fox Inc. v. Small Bus. Admin.*, 121 F.3d 1357, 1361 (9th Cir.1997). Thus, even if General Dynamics's claims may ultimately require the United States to fund the cost of defense in this or other suits, the claims in the suit at bar are not for money damages. General Dynamics has met the first requirement for a § 702 waiver of sovereign immunity.

### B.

■ To be sure, General Dynamics does not have an "adequate remedy" in the Court of Federal Claims, *see* 5 U.S.C. § 704, because that court is not authorized to grant the equitable relief that General Dynamics seeks here. In *Bowen v. Massachusetts*, 487 U.S. 879, 905, 108 S.Ct. 2722, 2737–38, 101 L.Ed.2d 749 (1988), the Court rejected the United States's contention that APA § 704 prevented district court jurisdiction over claims for equitable relief against the United States. Massachusetts had sought declaratory and injunctive relief requiring the United States to reimburse it for Medicaid expenses. *Id.* at 882, 887, 108 S.Ct. at 2726, 2728–29. The Court rejected the "novel submission that the entire action is barred by § 704," *id.* at 901, 108 S.Ct. at 2736, stating:

> The Claims Court does not have the general equitable powers of a district court to grant prospective relief.... We are not willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties.

*Id.* at 905, 108 S.Ct. at 2737.

Like the State of Massachusetts in *Bowen*, General Dynamics seeks equitable relief that cannot be satisfied by the mere payment of money damages. General Dynamics alleges that the Modification Center Contract requires the United States to defend the suits brought against it. General Dynamics has introduced evidence that it already has been subject to four such suits, including the suit at bar. As General Dynamics points out, the commencement of these suits fifty years after the fact is evidence that they may contin-

ue to arise in the future. The company may be able to obtain monetary indemnification in the Court of Federal Claims, but this will not reimburse the substantial litigation costs it could incur in defending countless suits. Given these facts, the remedy of monetary indemnification alone is inadequate in light of the "ongoing relationship between the parties." *Bowen*, 487 U.S. at 905, 108 S.Ct. at 2737; *see also Marshall Leasing, Inc. v. United States*, 893 F.2d 1096, 1101 (9th Cir. 1990) (district court jurisdiction proper where monetary relief not available and Court of Claims could not hear equitable claims).

The district court found *Bowen* inapplicable in this case because "*Bowen* does not disturb the rule that the APA does not waive sovereign immunity for contract-based claims seeking equitable relief." *Tucson Airport Auth. v. General Dynamics Corp.*, 922 F.Supp. 273, 283 n. 7 (D.Ariz.1996). However true, this statement conflates two distinct concepts necessary to our analysis: the presence or absence of an adequate remedy within the meaning of § 704, and the requirement that a cause of action not be "impliedly forbidden" under § 702. Thus, our determination that General Dynamics does not have an adequate remedy elsewhere does not end our discussion. General Dynamics must still show that its claims are not "impliedly forbid[den]" under § 702. *North Star Alaska v. United States*, 14 F.3d 36, 38 (1994) [*North Star Alaska III* ] ("*Bowen* ... did not involve a contract and it did not address the 'impliedly forbids' limitation on the APA's waiver of sovereign immunity.").

### C.

We turn, then, to the third requirement necessary to establish an APA waiver of sovereign immunity: The claims must not seek relief "expressly or impliedly forbid[den]" by another statute. *See* 5 U.S.C. § 702. The government argues that General Dynamics's claims fall within this exclusion because the Tucker Act—the statute generally permitting claims against the government—impliedly forbids them. We agree. The Tucker Act provides that:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States....

28 U.S.C. § 1491(a)(1). The district courts have concurrent jurisdiction, with the Court of Federal Claims, over contract claims against the United States for less than $10,000. 28 U.S.C. § 1346(a)(2). In all other contract claims, however, § 1491 gives the Court of Federal Claims exclusive jurisdiction to award money damages, and "'impliedly forbids' declaratory and injunctive relief and precludes a § 702 waiver of sovereign immunity." *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1485 (9th Cir.1985); *see United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). Whether the district court has jurisdiction, then, depends on whether General Dynamics's claims are contractually- or statutorily-based; if contractually-based, there is no jurisdiction. *North Star Alaska III*, 14 F.3d at 37.

Counts One and Two of General Dynamics's complaint allege Contract Settlement Act ("CSA") violations. The CSA provides that war contracts settled under the Act are "final and conclusive," 41 U.S.C. § 106(c), meaning they "shall not be reopened, annulled, modified, set aside, or disregarded by any officer, employee, or agent of the United States." 41 U.S.C. § 103(m). The United States does not deny that the Modification Center Contract is subject to the CSA.

General Dynamics's claims that emerge from the CSA are contractually-based, not statutorily-based, and therefore are barred by the Tucker Act. *North Star Alaska III*, 14 F.3d at 37–38. These claims are based solely on the Modification Center Contract's provision that "[t]he government shall assume and become liable for all obligations, commitments and claims that" Consolidated had undertaken or incurred. In contrast, in *North Side Lumber*, 753 F.2d at 1483–1484, we upheld district court jurisdiction over claims that the Secretary of Agriculture's enforcement of timber-cutting contracts violated the Multiple–Use Sustained–Yield Act of 1960. District court jurisdiction was proper be-

cause "the statutory claim [did] not seek a declaration of contract rights against the government. Rather, it ask[ed] for a declaration that, whatever the content of those rights, federal statutes preclude the government from enforcing them." *Id.* at 1486.

Unlike the plaintiffs in *North Side Lumber,* General Dynamics is not asking for a declaration of the CSA's effect on its contract rights against the government, "whatever the content of those rights." Instead, General Dynamics, like the *North Star Alaska* plaintiff, is asking the district court to decide what its contract rights are. *North Star Alaska III,* 14 F.3d at 37–38; *see also Spectrum Leasing Corp. v. United States,* 764 F.2d 891, 894 (D.C.Cir.1985).

General Dynamics's CSA claims do not exist independent of the Modification Center Contract. The CSA does not impose a substantive duty on the United States to defend these claims. That duty, if it exists, derives from the contract. Moreover, General Dynamics seeks specific performance of the contract. The conclusion follows that these claims are contractually-based. *See Spectrum Leasing,* 764 F.2d at 894. Accordingly, we hold that the APA does not waive sovereign immunity with respect to General Dynamics's CSA claims.

## IV.

In Counts Three through Five of its complaint, General Dynamics alleges that the United States's failure to honor the terms of the Modification Center Contract violates its federal constitutional rights under the Public Debt Clause, U.S. Const. amend. XIV, § 4, the Due Process Clause, U.S. Const. amend. V, cl. 4, and the Takings Clause, U.S. Const. amend. V, cl. 5.

We have previously briefly addressed the issue of whether the Tucker Act impliedly forbids constitutional claims arising from a contract with the United States government. *See North Star Alaska III,* 14 F.3d at 36. In *North Star Alaska,* the plaintiff argued that, absent reformation, its outlease violated article IV, section 3, clause 2 of the United States Constitution, which establishes Congress's power over public lands. *North Star*

*Alaska II,* 9 F.3d at 1432. We applied the same analysis to both the statutory and constitutional claims:

> North Star argues that its claim for reformation "seek[s] to enforce extracontractual *Constitutional and statutory* obligations." The jurisdictional issue, however, turns on the "source of the rights upon which the plaintiff bases its claim."

*North Star Alaska III,* 14 F.3d at 37 (emphasis added) (quoting *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 968 (D.C.Cir.1982)). We held that both the statutory and the constitutional claims-which were dependent on the reformation issue-were barred as contractually-based. *Id.* ("North Star's right to *reformation* is based upon the contractual agreement itself.").

Similarly, because General Dynamics's constitutional claims are contractually-based, the district court lacks jurisdiction under the Tucker Act. All three constitutional claims are premised on the notion that the United States has some contractual obligation to General Dynamics under the Modification Center Contract that it has failed to satisfy. If the Modification Center Contract imposes no such obligation, the United States owes no duty to General Dynamics giving rise to an alleged constitutional violation. Because the United States's obligation is in the first instance dependent on the contract, these claims are contractually-based.

General Dynamics relies on the D.C. Circuit's decision in *Transohio v. Director, Office of Thrift Supervision,* 967 F.2d 598 (D.C.Cir.1992), for the proposition that the Tucker Act does not impliedly forbid its constitutional claims. There, the court disallowed district court jurisdiction over the plaintiff's pure contract claim, but held that jurisdiction over its constitutional due process claim was proper, "even though that claim rested necessarily on the premise that [the] contract with the government gave [the plaintiff] a constitutionally protected property interest." *Id.* at 610 (discussing *Sharp v. Weinberger,* 798 F.2d 1521, 1523 (D.C.Cir. 1986)).

Notwithstanding the similarities between this case and *Transohio,* to the extent that the teachings of *Transohio* relating to consti-

tutional claims are inconsistent with the ruling case law of this court, we will not follow them. *North Star Alaska III* stands for the proposition that the Tucker Act prevents constitutional claims that are dependent on rights under a government contract from being brought in the district court. This rule prohibits the district court from exercising jurisdiction over General Dynamics's constitutional claims, because they are predicated on a contract.

## V.

■ We conclude also that mandamus does not lie because the defendant officers had no clear, ministerial duty to act. *See* 28 U.S.C. § 1361; *Greater L.A. Council on Deafness, Inc. v. Baldrige*, 827 F.2d 1353, 1362 (9th Cir.1987). We review de novo the district court's dismissal for lack of mandamus jurisdiction. *Pescosolido v. Block*, 765 F.2d 827, 829 (9th Cir.1985).

■ Unless an officer of the United States acts without statutory authority, the officer's acts are the acts of the sovereign, immune from suit to the same extent as the United States itself is immune. *Aminoil U.S.A., Inc. v. California State Water Resources Control Bd.*, 674 F.2d 1227, 1234 (9th Cir.1982). "A simple mistake of fact or law does not necessarily mean that an officer of the government has exceeded the scope of his authority." *Id.*

As the district court properly held, General Dynamics's claims that the Secretaries of Defense and the Air Force wrongfully failed to defend it allege, at most, a mistake of law:

> General Dynamics has failed to identify a statutory duty to defend. That duty, to the extent that it exists at all, is contained only in the Modification Center Contract.

922 F.Supp. at 285. Because General Dynamics cannot show the clear lack of authority for the Secretaries' actions necessary under § 1361, those acts must be imputed to the United States and are subject to sovereign immunity to the same extent as the claims against the United States. Therefore, the mandamus count is barred under APA § 702 and the Tucker Act.

## VI.

Finally, we recognize that our decision imposes on General Dynamics a burden that perhaps may appear both inefficient and unfair. General Dynamics must engage in the substantial task of defending this suit in federal district court, and only then may it obtain relief, most likely incomplete, in the Court of Federal Claims. As our discussion has shown, however, this result is clearly dictated by the principles of sovereign immunity and the limited jurisdiction of federal courts, which only Congress-and not this court-can change. The equities are on the side of General Dynamics, but the law is against it.

We have considered all arguments advanced by the parties and have concluded that no further discussion is necessary. AFFIRMED.